**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KATHRYN CIFELLI,**<br><br>Plaintiff,<br><br>*v.*<br><br>**THE SCHOOL DISTRICT OF PHILADELPHIA, et al.**<br><br>Defendants. | **CIVIL ACTION**<br><br>**NO. 26-cv-6079-KSM** |

**MEMORANDUM**

**MARSTON, J.** **October 1, 2026**

On September 17, 2026, Plaintiff Kathryn Cifelli filed an Emergency Motion for Preliminary Injunction asking the Court to "preserve [her] employment relationship and family health coverage" with Defendant, the School District of Philadelphia, "long enough to adjudicate the dispute" before the Court and "before the threatened administrative separation creates an avoidable treatment crisis." (Doc. No. 8-1 at 1.) The District opposes the Motion, arguing that Plaintiff does not make the necessary showings of likelihood of success on the merits or irreparable harm absent an injunction. (Doc. No. 10-1 at 5.) The Court held an evidentiary hearing on September 29, 2026, and denied Plaintiff's motion on the record for failure to meet her burden. (Doc. No. 14.)

## I. FACTUAL BACKGROUND

Plaintiff has been employed by the District since approximately 2005 and a Kindergarten teacher at Samuel Gompers Elementary for more than a decade. (Doc. No. 1 at 1, 7.) Beginning in 2024, Plaintiff began to publicly voice her strong criticism and "moral objection[s]" of the

District's new "EL Education Curriculum" and its developmental appropriateness[1]. (*Id.* at 7, 9.) She alleges that in a conversation with Principal, Phillip DeLuca, he told her that her advocacy made her a "target" and that while he did not want to fire Plaintiff, if necessary, he would "make it a slow process."[2] (*Id.* at 9.) After this meeting, she asserts that she received "extraordinary administrative scrutiny" which led to her taking medical support leave due to a diagnosis of a "trauma-related disorder." (*Id.* at 10, 14.) Subsequently, Plaintiff and her treating physician directed that a reassignment to a Head Start or Pre-K teaching environment would accommodate her disorder and allow Plaintiff to return to work. (*Id.* at 15.) On April 1, 2026, Plaintiff's counsel submitted a request for reassignment as a reasonable accommodation and identified a vacant Head Start/Pre-K position, "or an equivalent vacancy" as an appropriate accommodation. (*Id.* at 19.) On May 18, 2026, Defendant Burnett Coke, Director of Leaves, Accommodations, and Wellness, conducted an interactive-process meeting with Plaintiff to discuss her accommodation, and on May 26, 2026, issued a written determination denying her requested reassignment. (*Id.* at 21.) Defendant Coke sent Plaintiff a Letter stating that:

> Based on the information provided, the concerns raised relate primarily to disagreements regarding required curriculum implementation and supervisory oversight expectations. As such, reassignment to another department or position would not address the underlying concerns identified during the interactive process.

(Doc. No. 8-2 at 60.)

However, the Letter stated that the District was "committed to engaging in the interactive process in good faith. Should you wish to provide additional medical documentation or discuss

[1] During the Court's evidentiary hearing, Defendant DeLuca stated that Plaintiff went so far as to describe the curriculum as "child abuse."

[2] During the Court's evidentiary hearing, Defendant DeLuca admitted to calling Plaintiff a "target" but denied that it was used in the context she asserts.

other potential accommodations and/or available opportunities within the [] District [] for which you may be qualified, we are willing to continue those discussions." (*Id.* at 61.) Plaintiff was directed to continue to perform her position or, if applicable, use available leave options. (*Id.*) Plaintiff did not respond to this email but asserts that she "continued communicating with Coke throughout June and July 2026 seeking clarification and resolution." (*Id.* at 22.)

On July 23, still without a resolution, the District sent Plaintiff a Notice stating that her 130 days of wage continuation would expire on September 30, 2026, and that absent a selection of retirement, resignation, or return to service[3], the District would treat her as resigned and update her employment status accordingly. (Doc. No. 8-2 at 63.) Plaintiff did not return this Notice with a selection.

Instead, Plaintiff continued to seek a viable accommodation with the District and on August 14, 2026, the District offered Plaintiff a 6th grade teacher position at Pennypacker Elementary School, writing in a letter that the position "aligns with your instructional certification and the limitations asserted in your August 7, 2026 communication."[4] (*Id*. at 24.) Plaintiff rejected this position via email on August 19 and filed this Complaint on the same day. (Doc. No. 1.) She characterizes her Complaint as a "civil rights action aris[ing] from the School District of Philadelphia's treatment of a twenty-year educator after she repeatedly voiced concerns regarding the District's mandatory elementary-school curriculum and advocated regarding its effects upon students and public education." (Doc. No. 1 at 1.) She brings the

---

[3] The fine print after "Return" states "Request medical approval to return to full duty from both my personal physician and Leave Administration prior to the above date, if it has not been determined that I am medically unable to return to work. (Doc. No. 8-2 at 63.)

[4] The parties agree that Plaintiff is only board certified to teach preK and K–6 (*see* Sept. 19 Status Conf. 8:8–9 ("She's only certified in preK and K to 6.")).

following claims against the District: disability discrimination and failure to accommodate pursuant to § 504 of the Rehabilitation Act, retaliation pursuant to § 504, and a Monell Claim pursuant to 42 U.S.C. § 1983 (Counts I, II, VII). She also brings first amendment retaliation claims pursuant to § 1983 (Counts III–V) against Defendants Phillip DeLuca; Aribelle Jones, and Burnett Coke in their individual capacities. And she brings a first amendment retaliation – freedom of association claim (Count VI) pursuant to § 1983 against Defendant Karletta Poland.

On September 4, 2026, Plaintiff completed a clinical assessment which recommended she attend High Focus Treatment for "intrusive worry, sleep and appetite disturbance, concentration problems, withdrawal, hopelessness, and passive death ideation." (Doc. No. 8-1 at 7.) She currently attends High Focus Treatment at an intensive outpatient treatment five days a week from 8:30 am to 12:30 pm. She has not been medically cleared to work and has no definite return date. (*Id.* at 8.)

On September 17, 2026, over a month after Plaintiff filed her Complaint, she filed the instant "Emergency Motion for Preliminary Injunction and Expedited Hearing" asking for the Court to award the following relief:

- For sixty days, the District should be prohibited from recording or implementing assumed resignation, voluntary quit, job abandonment, retirement, or separation based on Plaintiff's refusal of the August 14 sixth-grade assignment, failure to select resignation or retirement under the July 23 notice, or medically documented absence during active psychiatric treatment.
- The District should maintain the same family health coverage in effect immediately before entry, subject to Plaintiff's ordinary employee contribution.
- If Plaintiff supplies written clinical clearance during the protection period, the District should meet with her and counsel, evaluate the actual duties and setting of available positions, and issue a written determination identifying the accommodation offered or the specific vacancy, qualification, seniority, or hardship reason an effective accommodation is unavailable. The order need not guarantee Head Start or any particular assignment.
- The District should produce, on an expedited basis, the documents establishing (1) the exact separation and health-coverage consequences of the September 30 wage-continuation expiration; (2) the relevant Head Start and early-childhood vacancies and their disposition; and (3) the contractual or policy rules the District contends govern

reassignment.

- Plaintiff requests that she be required to provide the District with medical update every fourteen-days and requests a status conference within thirty days;
- Plaintiff requests that the Court set the security at $0 or, alternatively, the lowest nominal amount the Court deems required.
- She seeks such narrower relief within the motion's scope as is necessary to prevent interruption of medically necessary care before the merits can be adjudicated.[5]

(*See* Doc. No. 8-1 at 15–17.)

On September 18, 2026, the Court held a status conference to discuss the Motion and ordered the District to file a response on or before September 22, 2026. On September 21, 2026, the District filed an Answer in Opposition. (Doc. No. 10.) On September 24, 2026, Plaintiff filed a Reply. (Doc. No. 11.) And on September 29, 2026, the Court held an evidentiary hearing on the motion. and orally denied Plaintiff's motion on the record. (Doc. No. 15.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65 this court has the power to "grant preliminary injunctions to enjoin harmful conduct." *ASI Bus. Sols., Inc. v. Otsuka Am. Pharm., Inc.*, 233 F. Supp. 3d 432, 437 (E.D. Pa. 2017); *see also* Fed. R. Civ. P. 65(a).[6] "Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Arrowpoint Cap. Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 318 (3d Cir. 2015) (quotation marks omitted).

A party seeking a preliminary injunction must present evidence showing: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is

---

[5] In the alternative, she also requests a "short temporary restraining order on notice, limited to employment status and health coverage with a definite expiration and prompt hearing under Rule 65." (Doc. No. 8-1 at 17.)

[6] Likewise, the court may grant a temporary restraining order if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable harm . . . will result to the movant before the adverse party can be heard in opposition . . . ." Fed. R. Civ. P. 65(b)(1)(A); *see also Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 159–60 (3d Cir. 2020).

denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Arrowpoint Cap. Corp.*, 793 F.3d at 318–19 (quotation marks omitted). If a party fails to establish likelihood of success on the merits and irreparable harm—what the Third Circuit has referred to as the "gateway factors" of this test—then the Court need not consider whether all four factors balance in favor of granting preliminary relief. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *see also Arthur Treacher's Franchise Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.").

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing Fed. R. Civ. P. 52(a)(2). This process pursuant to Rule 52 occurs "even when there has been no evidentiary hearing on the motion." *Id.* Nevertheless, at the preliminary injunction stage, "procedures . . . are less formal and evidence is less complete than in a trial on the merits." *Kos Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700, 718 (3d Cir. 2004); *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (internal citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). The weight given to such materials will "vary greatly depending on the facts and

circumstances of a given case." *Id.* at 719. The Court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See Hudson Glob. Res. Holdings*, *Inc. v. Hill*, No. 07cv0132, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007).

## III. DISCUSSION

Here, the Court denies Plaintiff's request for preliminary injunctive relief because Plaintiff fails to establish irreparable harm.[7] To satisfy this prong of the preliminary injunction test, a plaintiff must produce affirmative evidence indicating that they will be irreparably harmed should relief be denied. *Marxe v. Jackson*, 833 F.2d 1121, 1127 (3d Cir. 1987). To show "irreparable harm," a plaintiff must demonstrate that there is a "potential harm which cannot be redressed by a legal or an equitable remedy following a trial" such that a preliminary injunction is "the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The alleged irreparable injury must be *likely*, not merely possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). And "[m]ere injuries, however substantial, in terms of money, time and energy expended . . . are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

---

[7] In the alternative, the Court also finds that Plaintiff is not reasonably likely to succeed on the merits of her ADA claim. Considering the parties' submissions and the testimony and documents submitted during the evidentiary hearing, the Court does not agree with Plaintiff that Defendant "did not act in good faith in seeking an accommodation for Plaintiff's [alleged] disability." *Hofacker v. Wells Fargo Bank Nat'l Ass'n*, 179 F. Supp. 3d 463, 468 (E.D. Pa. 2016). Defendants have now offered Plaintiff two open positions, a 6th grade position, and a 4th grade position offered to Plaintiff during the evidentiary hearing, and Defendant Coke has emailed and met with Plaintiff no less than eight times to discuss her accommodation requests. (Doc. No. 11 at 5.) Instead of continuing to engage in the interactive process, on August 19, 2026, Plaintiff rejected Plaintiff's offer of a sixth-grade position and filed this lawsuit. *Id.* (citing *Kortyna v. Lafayette Coll.*, 47 F. Supp. 3d 225, 240 n.50 (E.D. Pa. 2014) (holding that the plaintiff's decision to sue rather than to respond to proposed recommendations resulted in a "failure to engage in th[e] interactive process [which] would also preclude his claim")).

Here, Plaintiff argues that "loss of access to necessary care will cause irreparable harm." (Doc. No. 8-1 at 13.) As support, she points to *Adams v. Freedom Forge Corp*, 204 F.3d 475 (3d Cir. 2000), through which she argues the Court "rejected a categorical rule that a change in health benefits is irreparable, but held that individuals who showed higher premiums and medical costs would force them to forgo necessary treatment or basic necessities had established immediate irreparable harm." (Doc. No. 8-1 at 13.) Plaintiff states that her income will drop to $0 after September 30 and "without continued [health insurance] coverage or an affordable alternative she will be unable to maintain the psychiatric care and prescriptions she is receiving." (*Id.*) In response, the District argues that the possibility of her being forced to decline medical treatment if she is terminated from the District is "speculative at best, and that speculation does not provide sufficient grounds for an injunction under *Adams*." (Doc. No. 10-1 at 15.)

While we have sympathy for Plaintiff's fears about losing health coverage, the Court agrees with the District that Plaintiff's risk of irreparable harm is speculative and not sufficient at this time to be the type of harm that can only be redressed by an injunction. *Adams*, 204 F.3d at 488 ("[W]e have [] insisted that the risk of irreparable harm must not be speculative. *See, e.g.*, *Acierno v. New Castle Cty.*, 40 F.3d 645 (3d Cir. 1994).")) A few facts lead the Court to this conclusion.

Significantly, since Plaintiff does not intend to return the Notice regarding her wage continuation, she will be deemed terminated from the District as of September 30th. But the District has noted that Plaintiff's health care will continue "up to 89 days" after her termination and then COBRA benefits will be offered. (Doc. No. 10-1 at 14.) And in Plaintiff's Reply, she concedes that "[i]f existing coverage in fact continues beyond September 30, that information may narrow the temporal urgency of some relief." (Doc. No. 11 at 2.) Irreparable harm "must

be imminent" – which the District's confirmation of extended coverage negates here. *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).

And Plaintiff is entitled to use the COBRA benefits for up to eighteen months in order to ensure health coverage for Plaintiff and her family.[8] (Sept. 18 Status Conf. Tr. at 3:12–13 ("She qualifies for COBRA through the district.").) While COBRA medical coverage costs $2,362.51 a month, enrollment in this program would eliminate any potential interruption in health care. (*Id.* at 5:9.) During the Court's evidentiary hearing, the District also identified that Plaintiff may be eligible for the Public Employees Retirement System ("PERS") which provides monthly income and health coverage for members of the program who are permanently disabled or unable to perform their job for an extended period of time. Both of these options belie Plaintiff's claims that "[w]without continued coverage *or an arrangement I can afford*, [she] would be unable to obtain daily hospital-level psychiatric care, required psychiatric prescriptions, and ongoing specialized pediatric medical care beginning October 1, 2026." (Doc. No. 8-2 at 54) (emphasis added). Plaintiff has not made a sufficient showing that absent her employer sponsored plan she would choose to forgo enrollment in COBRA or PERS, nor does she show how either coverage would be insufficient to provide her with the care she needs.

To the contrary, there is evidence in the record Plaintiff has the means to pay such benefits for at least some period after her current benefits expire. Plaintiff claims that her husband is employed as a real estate developer though she claims with "fluctuating and unpredictable business operations." (Doc. No. 8-2 at 53.) And during the Court's evidentiary

[8] And, as the District points out, Plaintiff and her family may be eligible for Medicaid based on their family income, which provides free or low-cost health coverage to eligible-low-income adults, families, and children. (Doc. No. 10-1 at 11 n.5.) Plaintiff may also be eligible for unemployment compensation and find a new employment opportunity. (Doc No. 10-1 at 15.)

hearing on September 30, 2026, Plaintiff testified that her husband had $47,000 in a checking account. (Doc. No. 15.) Plaintiff vaguely claimed she believed this money was earmarked to pay other debt and her husband's business expenses. But she also stated that her husband—not her—pays their mortgage and other household bills and she did not have any specific information regarding (1) the sources of those funds or (2) the specific allocations of the $47,000 amount. These funds are sufficient to cover Plaintiff's enrollment in COBRA, and Plaintiff has failed to show why her and her family could not use this money to fund this *potential* expense.

*Adams* supports the Court's conclusion. Principally, in *Adams*, a class-action lawsuit, the Third Circuit determined that for "many if not most of the plaintiffs in this case, the risk of irreparable harm [was] speculative given the evidence present to the District Court." *Adams*, 204 F.3d at 488. The Court further reasoned that "[t]he plaintiffs rely [only] on the common sense approach . . . to reason that most of these retirees probably cannot afford the premiums" and concluded that "[t]his speculation cannot support an injunction." (*Id.*) Here too, it is purely speculative at best at this stage whether or not Plaintiff would be forced to forgo medical care once her termination from the district is final given the funds in her husband's account and the eighteen months of COBRA coverage she will be offered (or the PERS program she may be eligible for).

And given that her existing health coverage will continue beyond September 30, likely for up to 89 days, she will not have to "forego medical care" in any immediate term like *Adams* contemplates. (*Id.* at 485.) A harm that *may* take place months into the future cannot be enough to support a preliminary injunction now, in October 2026.

Finally, Plaintiff's asserted injuries regarding her challenges to *affording care* are not appropriate for a preliminary injunction. Irreparable harm cannot be established by showing

"injuries, however substantial, in terms of money." *Sampson,* 415 U.S. at 90. To the extent Plaintiff is concerned about the cost of such medical care and seeks recompense from the District through this action, this issue is better left to a jury after comprehensive fact finding, not brought before this Court on an expedited posture without the benefit of a fulsome record.

For these reasons, the Court finds that Plaintiff does not establish irreparable harm.

## IV. CONCLUSION

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted). For the reasons discussed, the Court holds that Plaintiff cannot demonstrate irreparable harm. The Court denies her request for injunctive relief.